U.S.A. v. O.M.M.A.R. Good afternoon, Your Honors. Matt Larson of the Federal Defenders for Mr. Miller. Your Honors, a trial judge is required to permit at least some questioning with respect to any material issue that may arise at trial. And as this Court recognized in Gibbons, a relationship with law enforcement personnel is a source of possible biases, which has become evident through experience with juries. Here, however, the District Court refused our request to ask the prospective jurors if they had any relationship with federal law enforcement officers. This was in a case where Mr. Miller was accused of deceiving federal law enforcement officers into obtaining a visa and where all six of the government's witnesses were law enforcement officers. The judge did ask the question about law enforcement officers but had a qualification with respect to the question, namely whether it would affect their decision in the case. That's right, Your Honor, that qualifier. But the relations with law enforcement officers came out from numerous people and numerous times the judge, as soon as a relationship that was too close to a law enforcement officer, without even asking, the judge disqualified the witness, like the security guard at the World Trade Center. Yes, some individuals did volunteer relationships with law enforcement officers. That only, however, begs the question. Those individuals volunteered that information. There, in fact, has never been a case where the refusal to ask a question as you phrased it was sufficient to find that the voir dire was insufficient. In fact, there is a case, Your Honor, I discovered it this weekend preparing for oral argument. It's from the D.C. Circuit. I'll be submitting a 28-J letter today. The facts are materially identical. The court there asked the prospective jurors, I'm giving you a two-part question. First, does anyone have ties to law enforcement? But you only have to raise your hand if you think that would make it impossible to be fair. The D.C. Circuit said that is a reversible error, an infringement of the individual's Sixth Amendment right to an impartial jury and to meaningfully exercise his peremptories. What's the name of the case? Little John, and I'll be submitting it today, Your Honor. Am I right? Your only objection to the voir dire is with respect to asking specific questions that would have provided you with sufficient information to exercise your peremptory challenges. As well as causal challenges, Your Honor. I mean, we're not obviously the most. Well, you don't object to anything in your brief about challenges for cause, that the judge didn't grant a challenge for cause that you had or that the judge prevented you from making challenges for cause? We couldn't make challenges for cause, Your Honor, if we didn't know who worked for law enforcement. Okay, but there's nothing in your brief that says, here was a challenge for cause that the judge should have granted and didn't. Like juror number 97, who said that he felt strongly on border patrol. Indeed. And you exercised a peremptory, and you don't claim in your brief that the judge should have disqualified that juror on cause. That's correct. That's correct. There are no issues with respect to challenges for cause here. Here, it's not that someone was kept on and they should have been dismissed for cause. It's that we didn't have the information to make the challenge. If the individual doesn't know if someone works, for example, for border patrol, we couldn't have inquired as to whether that would affect the person's ability to be fair. Does your argument come down to the question about law enforcement? Because in your brief, you make much of the fact that background questions, such as education, members of the household, were not asked. Yes, Your Honor. In the laws case, this Court recognized the need to give counsel, quote, a feel as to each potential juror to allow a reasonable exercise of challenges. And the Court said it's possible that voir dire may be so lacking in substance as to afford too little information about a potential juror's outlook, experience, and lifestyle. Now, Judge Kuntz here admitted that there was little detail given. When we said at one point in the voir dire, and this is on page 217 of the special appendix, we objected that, Judge, we didn't learn any specifics about a particular juror's background. The judge responded, you did not learn any specifics about a lot of the jurors. This Court recognized in laws that there may be an unusual case where the information is so lacking as to preclude meaningful exercise of jurors. What was the page again? That's 217 of the special appendix, Your Honor. We submit this is a very unusual case. This is not at all the usual practice that our office has observed in any other district court. The refusal to ask, what do you do for a living? Do you have other people in your family? What do they do for a living? Do you have views particular to Jamaicans applying for visas, for example? Do you have particular views as to law enforcement officers being more credible? The judge actually did describe the case as a case of visa fraud with someone coming from Jamaica. So that if that raised any questions in the jurors' minds, that could have been pursued. And it was pursued with numerous cases. The key point, Your Honor, is in the jurors' minds. This Court has recognized in the Torres case, which we cite in our briefs, that human nature being what it is, quote, the bias of a juror will rarely be admitted by the juror himself, either because he wants to conceal it or because he's unaware of it. And here we have that. At voir dire, the Court asked a particular juror, and this is on page 186 of the special appendix. The judge asks, do you have any biases one way or another going into this case? The individual responds, not that I'm aware of. The Court says, thank you. You may serve. But there was the question which described for the jurors that the case was about visa fraud with someone coming from Jamaica. And is there anything about that that would prevent you from being a fair and impartial juror in this case? Why would that question not, from any juror who is being truthful, have provoked any bias against visa fraud cases or people from Jamaica, as it did with the vast amount of jurors, an unusual number of strikes in the case? Because a truthful juror can honestly believe that he harbors no bias. So how would you ask the question whether someone is biased against someone from Jamaica, other than to ask that question? We would ask simple questions.  Do you have any feelings about the veracity of a law enforcement officer? This Court held in Torahs and every other circuit has held in this context that a court cannot delegate to a juror the decision whether he or she can be fair as a subjective matter of judgment. There has to be objective information that will at least allow further questioning. And, Your Honor, by the way, for a person to say, yes, I have ties to law enforcement, we're not saying that's per se cause to remove them from the jury. What we're saying is what this Court said in the Colombo case. When such information is provided, then questions can be asked. Let me ask you, Mr. Larson, do we have any indication on this record that any of the prospective jurors that were chosen to serve were law enforcement agents? No, because there's no basis to say one way or the other, Your Honor. For all the record does show... there's no basis to say either way. Because the judge did not ask what these individuals did for a living, for all the record shows, there was a border agent on the jury. There's certainly no proof that there wasn't such a person on the jury. Again, the qualifier, Your Honors, this delegation of tell me only if you think you can't be fair, this Court and every other circuit has said that's not adequate. In order for meaningful exercise of peremptories, there has to be the information to make the question. In your reply brief, you say that the government does not dispute that it is impossible to tell if Miller was indeed judged by 12 fair and impartial jurors. And where did the government make that concession? It's not an expressed concession. It's the fact that the government does not say we know that the jury was impartial. To Judge Cabranes' question right now, because this evidence was not presented, specifically employment, there's no way to tell whether a border agent was on the jury or not. There's no way to tell one way or the other. It's impossible to determine. So the government rightly cannot assert we know for a fact that Mr. Miller received a fair trial. My point is that this Court cannot be confident that he did. That itself is a reason to give this case a hard look. It's also a reason to give this case a hard look because of the highly unusual fact pattern here. This is not a normal occurrence that we, the federal defenders, have observed in other courts. Wasn't it an unusual occurrence to do a sidebar voir dire with every juror in the array, every potential juror in the array? That may have been, Your Honor, but it's the substance of the questions that matter. When they were brought to sidebar, the judge said, if you didn't raise a paddle, is there anything that would prevent you from being fair? And if the person said no, they were allowed to serve. And even the government pointed out, they asked a question, wait a minute, judge, like if they just say no, there will be no further questions? And he said that's correct. This is not the normal practice. And Mr. Miller made very clear that he lacked the information to make intelligent use of his strikes. It's not that working or having a family member in law enforcement means you can't serve. It doesn't mean that for cause you must not serve. But Mr. Miller here was denied the ability to even make a challenge meaningfully or intelligently. And that was exactly the problem in the Littlejohn case that I'll be submitting today, which is materially identical to the situation here. I'll reserve the balance of my time. May it please the Court. My name is Ian Richardson. I represent the United States in this case. I want to address one of the points that defense counsel made, and that was I think a question that Judge Cabranes asked, and that was whether any person who was related to law enforcement made it on the jury. And the answer to that is actually yes. The answer to that is yes because of the 14 individuals who raised their hand and raised their paddles and identified a relationship with law enforcement, 12 of them were struck for cause. One was the subject of a peremptory challenge by the defense, and the other was seated and paneled on the jury. So with the two people who made it in. And that last one was known to have that relationship? That's correct. It's juror number 52, and he disclosed his relationship to a cousin in the New York City Police Department at 113 and 114 of the special appendix. But he was not among those that. Sorry, let me have that page again. 113 and 114 is where he disclosed the relationship to a cousin in the NYPD, and he was not among those that the defendant chose to use his peremptory strikes for. The defendant had ten peremptory strikes. The two people that made it through the challenge for cause process who had identified a relationship to law enforcement, he used only one of those strikes on one of the two jurors that identified that relationship. You say challenge for cause. It wasn't clear to me reading the voir dire when there was an opportunity for challenges for cause. The judge in this case struck most of the jurors based on his own determination of cause, but there were not independent requests by the . . . Was there . . . Your colleague on the other side has recognized, I think, that they don't raise any challenge to the proceedings for challenges for cause, but was there an opportunity here to make challenges for cause? I didn't see it. I was one of the assistants below that tried the case. It was a bit unusual in the sense that the judge did most of the strikes for cause himself. If there had been . . . Without asking. Without asking. He made his own determination. Had there been a moment to do so, I'm confident that the opportunity would have been seized. Did the judge explain what the process was going to be beforehand? He did. Where? I don't have the record cited in front of me, but it was addressed at the very beginning of jury selection. He explained to the parties that they would be conducting the questioning in a two-phase approach. There wasn't any provision for when challenges for cause would be made or what the array would be from which the parties would be exercising their peremptories for the panel of twelve. I mean, defense counsel made an incorrect strike to juror number eighty-four who is not really in that panel. Did the judge explain what was going to happen in terms of the numbers of how many are going to be in your jury panel and then we're going to have an alternate panel? And there were too many jurors left open at the end. What I will say is my recollection is that, at least speaking for the government, we had enough information to strike the jurors that we thought we needed to strike in order to empanel the jury in the box. I don't recall there being significant confusion on our side. What I do recall is that defense counsel was a bit disorganized and it was something that is reflected in the record, some of the comments from the district judge to defense counsel, some frustration about the way in which defense counsel had been disorganized in identifying the jurors that he wanted to strike. Personally, I don't recall having any confusion about how the matter was to proceed. I recall being instructed by the court at the beginning as to how the voir dire and the jury selection would take place and I was not particularly surprised when we got to the point where we were ready to use our strikes and we used our strikes in a manner that I think was consistent with how the judge intended to seat the jury. Weren't there too many jurors left open so that if you just took the jurors in the box after the first twenty-eight, there were too many jurors? If you exercised your peremptories against some of them, they were just wasted? My recollection is that because there were so many jurors who were struck for cause by the court, an additional group of members of the veneer were brought up to supplement and after going through the initial first phase of the paddle raising with that group of jurors and the ones that had been identified that could serve, that were suitable for service, then those were then seated in the box and then the parties were instructed to exercise their peremptories as to that group. There were too many. I don't recall that, but I'll take your honest word for it. Your brief says that there were forty-two jurors who were left. So you take twenty-eight, you take eight for the alternate pool, and then you have these other jurors there. But the appellant doesn't raise that whole process, so go ahead. Thank you, Your Honor. I think, Your Honor, as you've already pointed out, there's been no case to reverse and order a new trial based on these types of concerns about Voidir, and that's in recognition, I think, of the— I'm just curious. We haven't seen the 28J letter, but is Littlejohn to the contrary? I haven't heard of Littlejohn. This is the first I'm hearing of it, too, Your Honor. Go ahead. We'll all see it at the same time. Indeed. I can't speak to the law of the D.C. Circuit, but the law in this circuit is that the district judges enjoy extremely broad discretion that they must exercise consistent with the essential demands of fairness. That happened in this case. Twenty questions were asked of every single member of the veneer, and every single member of the veneer who the parties could potentially exercise preemptory strikes against were invited up for individual questioning in front of the district judge. In that process, those members of the veneer disclosed a number of things about themselves and about their views that caused many of them to be struck for cause and provided additional information to defense counsel. Now, he's right that with respect to some of those jurors who did not answer affirmatively to the questions and were invited up by the district judge and asked if there was anything that caused them to be unable to be fair and impartial, and they answered no, there was not a great deal of information, but there was not no information. You knew that from their negative answers to any of those questions that their answers to that list of 20 questions was no. Now, different judges do voir dire very differently, and I'm not quite sure on what basis Mr. Larson is contending that this is outside the normal or the standard. Personally, I don't have a great deal of trial experience, so I'll have to defer to the members of the bench who do have more trial experience than I do. But in my informal conversations with my colleagues, there are some judges who ask very few questions of potential jurors, and that's not terribly unusual. What was the justification for not striking juror number 97, the one who had views about immigration? Your Honor, I don't know. All I know is I believe the defense counsel didn't attempt to raise such a strike. You know, in other contexts, in the jury process— He felt strongly about Border Patrol. I believe that's right. I have a vague recollection of him. I think what I would note about the objections during the voir dire process is that defense counsel, for example, made a Batson challenge. The judge heard that Batson challenge and considered it. Those jurors who were being excused, even on peremptories, were excused before the judge decided the Batson challenge, so they had gone downstairs, right? The request was made to the judge to hold the hearing at sidebar on the Batson challenge before the jurors left, but they were— But then the jurors left, then the judge heard the Batson challenge. What would have happened if the judge had said, you know, you're right, those jurors shouldn't have been excused? I believe the jurors were sent back down to the central jury room, so they were down— My understanding is that they would have been down in the central jury room for potential recall if that were necessary. In addition, we have, of course, the contact information that caused them to be brought to the court in the first place. So in the worst-case scenario that one of the jurors had left the courthouse, we could have taken a— There could have been a break in the proceedings. We could have called them back. We could have summoned them back to the courthouse. In any event, the judge decided the Batson challenge against the defendant for the government, and the defendant hasn't raised that on appeal. I raise that just to point out, though, that the defense did have the opportunity to make objections because, for example, they raised the Batson challenge during the voir dire process. So if they had intended to raise a challenge to the forecast strikes, they could have, but they didn't. I see that my time is expiring. I'm prepared to answer any other questions the panel has. Is it the government's view that the voir dire proceedings in this case left largely unexplored, or could it not be said that the proceedings left largely unexplored, an important source of potential bias? I don't believe so, Your Honor. I believe based on the law enforcement question, and I understand that defense counsel has some quibble with the way the judge chose to phrase that question. How did the sidebar work exactly? So at the sidebar, the judge, of course, was there with the juror and both counsel, right? That's correct, Your Honor. And were each of the counsel present at the sidebar able to interject a question or to follow up on anything that was said by the judge? My recollection of the way that it proceeded is that typically the judge would wait until the juror had returned or walked away and then conference with the counsel in the case. And I recall on a couple of occasions, although I can't give you the specific juror, that jurors were summoned back to answer an additional question that was raised. Let me put my question another way. Counsel for both sides are present at the sidebar, and at some point, either when they're all there with the court reporter or shortly thereafter while the juror, the member of the voir dire, is still around, defense counsel could follow up. That's correct, Your Honor. So if this was a concern of theirs, there was no impediment to their asking a question on this? No, Your Honor. Panelists, no other questions? I'll take my seat. The details of the prior offenses was never disclosed at trial. The nature of the name of the offense, the elements of the offense were disclosed, but not the underlying details of the offense. Is that correct? That's correct, Your Honor. All right, we'll hear from Mr. Larson. Now, Mr. Larson, did you say you had already sent us a 28-J letter? No, I will be today, Your Honor. I'm sorry. I will be today, Your Honor. You will be today. Yes. Give us a hint as to what that letter will consist of. Oh, it will be the Little John case where on questioning identical to the questioning here, the D.C. Circuit found reversible error and a new trial was ordered. Your Honor just asked my colleague here if there was an impediment to questions being asked. He said no. Were you personally there? No, Your Honor. I'm an appeals lawyer. There was an impediment, and defense counsel at trial put it very plainly. I can't exercise perimetries if I don't know if people have relatives in law enforcement. Lacking the basic foundational information to even make a challenge is the problem here. No, but defense counsel at the sidebar was, at least in some cases, after the juror had gone back, given the opportunity to say that there were a couple of other questions of follow-up that should be asked with that witness, and the judge, I think on some occasions, asked follow-up questions. But not the important ones, Your Honor. The most glaring one that Your Honor brought up, the individual who volunteered that he feels strongly on border patrol, the judge said, good for you. Go take a seat. We said, Judge, could you please ask him, does that mean you'd have a problem being fair? No. Denied. Use your peremptory. Yeah, but you in your brief don't raise a question that there should have been a challenge for cause. You're right, Your Honor, and it's because we use the peremptory. The law says when you mistakenly use a peremptory, you forfeit the right to object about the denial of cause being erroneous. So that's why the issue wasn't raised. But that juror is really off the table. Yes, but we're using it to illustrate the problem here. That was the most kind of glaring example of not inquiring further than when there was not just a basis, but when the juror himself said there's a problem here, I don't think I can be fair. This Wadir was extraordinary in many ways. One of them was the sheer number of people who were simply excused. If the judge thought that they were too close to law enforcement, they were off without even asking the lawyers whether it was a fair challenge for cause. They were off. I agree. It was also a case where there was a huge amount of information that was volunteered by the jurors in response to the questions about immigration and coming from Jamaica, so that it's really not a case where you didn't get a Your Honor, if we had to rely on jurors' self-identifying biases, we could never intelligently exercise strikes. These jurors are to be commended for being forthright about their biases in this case, but that doesn't address the problem we've identified here. The problem here was the failure, as this Court recognized in Gibbons, the failure to, rather it was the foreclosure of a line of inquiry necessary to lay the groundwork for peremptories. Knowing in a trial where all the government's witnesses work for law enforcement and Mr. Miller is accused of lying to law enforcement, we need to know if there's anyone connected to law enforcement, if we're going to intelligently exercise this. The fact that some people volunteer that because they are forthright and say, yeah, I think there might be a problem, doesn't mean there aren't others who honestly believe they don't have a problem. This Court explained that in Torres, we don't rely on individual prospective jurors to self-identify their biases because we recognize that some people may actually want to conceal them, but probably a lot of other people just aren't aware of these biases. The purpose of Wadir is to identify bases on which we can reasonably challenge individuals, and here that information was just lacking. So, I mean, what the case comes down to is not the failure to elicit other the qualifier on the statement about law enforcement. The failure to ask the question in that way is the basis for reversal. We're briefing all of it, Your Honor, because we brief not only the failure to ask the question properly, and that alone was reason for reversal in Littlejohn, but we also invoke this Court's line of precedent expressed in laws, that to make of who is going to potentially sit in judgment of you. And here, not knowing not just what they did for a living, but who the members of their household were, what newspapers they read. Basic information that we have observed is asked in many trials. It doesn't mean that they're necessarily excludable for cause, but it is the basic stuff with which we intelligently exercise or try to exercise our strikes. So, the failure to ask what newspapers you read is sufficiently reversible? No, Your Honor, it's cumulative. That's what we're arguing on this record here. It is cumulative. We are not saying the failure to ask about newspapers is reversible. No, we're not, Your Honor. We're looking at the record as a whole. Nothing was asked other than name and county of residence. Everything was volunteered, and again, it was volunteered in the context of only raise your hand if you're biased. We're not going to objectively make an analysis here. We're going to rely on your self-reporting. But Torres says you can't do that. You cannot rely on self-reporting. Mr. Larson, although you were not there, I'm sure you're familiar with exactly what happened there. When is it that your co-counsel or counsel to the defendant, what did counsel to the defendant? The names and the counties of residence. That's all? That's in the record, other than what the jurors volunteered during the course. Is that all? That's what the record reflects, yes. I thought that some people wrote out some additional information. Some people said what they did or so. I believe there was . . . yes, the judge disclaimed this. Is there a standard form? There was a form that I believe was . . . I think one of the defense lawyers said we have some people filling out employment information. The judge said I don't know what that is. It wasn't given to me. I'm assuming it was prepared by the clerk's office, but I don't know, and it's not in the record, so I can't answer this accurately. Maybe we can have . . . I'll give you a chance to reply, but maybe Mr. Richardson can give us some information exactly what the scene . . . You were there, right, Mr. Richardson? That's correct, Your Honor. Why don't you tell us what counsel had before them or what papers they were able to review prior to the jury selection proceeding? The clerk's office generated an electronic list of all the members of the jury. It had their names. It had their counties of residence, and I recall that for a very small number, I don't think it was very many at all, there was an indication about what they might do for a living, and I want to say a small number. I only recall it being present for a few out of the list of over 150 total . . . And there's no other form? That was the form that was provided to counsel, Your Honor. All right. Thank you. Thank you, Your Honor. Washington, do you want to have a quick response? Certainly, yes. The small number is akin to the people who volunteered. The problem here is that we lack the basic information. We requested a jury questionnaire. The judge said no and requested background information not just on one thing, Your Honors, but on everything that would reasonably support a challenge, and that's the problem here on this very unusual record. Thanks very much.